IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEDESHIA TRAMMEL, | CIVIL DIVISION |
| Plaintiff, | Case No.  2:21-cv-1233 |
| v. | |
| BACHARACH, INC., | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *Preliminary Statement*

1. The plaintiff DeDeShia Trammel brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination based upon her race.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*  A jury trial is demanded.

B.   *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about May 10, 2021, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2021-01286.  This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated September 1, 2021.

5. This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. *<u>The parties</u>*

6. The plaintiff is an adult individual who resides at 1905 Kenneth Avenue, New Kensington, PA 15068 (Westmoreland County).

7. The defendant Bacharach, Inc. ("Bacharach" or "the company") is an entity doing business in the Commonwealth of Pennsylvania. At all times material, the defendant had a place of business located at within this district, specifically 621 Hunt Valley Circle, New Kensington, PA 15068 (Westmoreland County).

8. The defendant is a manufacturer of refrigerant gas leak detection and monitoring instruments and combustion and emissions analyzers for heating, ventilation, air conditioning, refrigeration and process industries.

9. At all times material, the defendant employed more than fifteen employees.

10. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. *<u>Factual Background</u>*

11. The plaintiff (African American), was employed by PeopleShare Industrial ("PeopleShare"), a staffing company that places workers at various companies, including industrial facilities for short- or long-term assignments. The plaintiff started working for PeopleShare on December 16, 2020.

12. PeopleShare assigned the plaintiff to work at Bacharach, Inc. ("Bacharach") starting on December 16, 2020 as a Floor Operator. The plaintiff was assigned to Bacharach's facility in New Kensington. After 90 days as a temporary employee, the plaintiff was eligible to be hired directly by Bacharach as a full-time union employee.

13. As a floor operator, the plaintiff's duties included packing products that were going to be shipped to customers and otherwise performing tasks as directed by her supervisors.

14. At all times relevant, the plaintiff was supervised by and reported to management staff of Bacharach. These individuals had supervisory control over the plaintiff and assigned her tasks and residents on a daily basis.

15. Further, Bacharach reserved the ability to terminate the plaintiff's "employment" at the facility for any reason.

16. Although PeopleShare paid the plaintiff for the hours she worked at Bacharach, Bacharach shared responsibility for the wages paid to "temporary" employees, including the plaintiff. Specifically, Bacharach paid PeopleShare for each hour worked by each temporary employee, including the plaintiff, and was required to pay overtime charges as applicable for hours worked in excess of 40 each week according to law. Finally, Bacharach was required to comply with all applicable federal, state and local laws and regulations concerning employment, including, but not limited to wage and hour, breaks and meal period regulations.

17. At all times relevant, the plaintiff was employed by PeopleShare and Bacharach and both were the plaintiff's employer.

18. Conner Norwicki, Floor Supervisor, was the plaintiff's supervisor while she was employed at Bacharach. Charles Galione was higher up in the chain of command. Upon information and belief, Galione was Norwicki's supervisor. Regis Currie was the shop steward; he was the union representative in the workplace and his role included being an initial point of contact regarding issues involving union employees.

19.     During her assignment/probationary period, the plaintiff performed all of the functions of her job in a competent fashion and was considered to be a good worker and was liked by most of her co-workers and managers.

20.     The plaintiff met Galione in person for the first time in January 2021. She went to introduce herself to him. Galione said, "I know who you are. I saw your resume and knew that I had to get you here [as an employee]". The plaintiff was touched by this vote of confidence and thanked Galione for his kind words.

21.     During the month of January 2021, Bacharach hired two of the PeopleShare temporary workers on as full-time union employees. Both of these individuals are Caucasian.

22.     During the month of March 2021, Bacharach hired one of the PeopleShare temporary workers on as a full-time union employee. This individual is Caucasian.

23.     The plaintiff's 90-day "anniversary date" was in mid-March. She and James [last name unknown] were the next candidates to be hired as full-time union employees of Bacharach.

24.     One day in approximately early April 2020, the plaintiff and Romona French, a co-worker, had spent most of the day on their feet working. The plaintiff saw Norwicki and told him that she and French had just finished the job assignment and needed the next assignment to finish out the day. She asked Norwicki if that assignment could one that involved sitting because their feet were hurting. Norwicki chuckled and complied with this request. This was the first (and only time) that she had ever raised any issue about her feet.

25.     In approximately mid-April 2021 (perhaps April 12, 2021), there was a meeting held by management and others, including Norwicki and Galione. One of the purposes of the meeting was to make decisions about whether certain probationary employees would be hired by the company as full-time union employees. The two candidates who were up for consideration

were the plaintiff and James.  Norwicki said that he did not want to hire James because "he is old and weird".  Norwicki also said that he did not want to hire the plaintiff because she's black and had made a "complaint" that her feet hurt.  Galione told Norwicki that he could not make employment decisions based on age or race and told Norwicki to hire both the plaintiff and James.

26. On April 13, 2021, Norwicki told the plaintiff that she was going to be hired on as a full time employee effective April 26.

27. On April 14, 2021, the plaintiff had a discussion with Currie.  He told her that there had been a meeting a couple of days ago during which Norwicki said that he did not want to hire her because of her color and that she had complained that her feet hurt.  He also said that Norwicki didn't want to hire James because he is old and weird.  He further said, "Galione overrode his decisions and told Norwicki to hire you and James".

28. This surprised the plaintiff, especially since Norwicki had told her that she was going to be hired as of April 26.  Currie said, "If you don't believe me, ask Audrey [Cathers, a Bacharach employee and the union secretary].

29. Later that day, the plaintiff happened to run into Cathers.  She asked, "I have to ask you a question and I want you to be honest with me." Cathers replied that she would.  The plaintiff asked, "Is it true what Regis [Currie] said to me?" Cathers did not seem surprised; she said, "Yes, it is true, but you have to understand that's just the way Conner is.  Loretta [Null] received a three day suspension for saying Conner is a racist.  She said that because no African Americans work here besides Regis [Currie].  I don't think that's right." Cathers assured the plaintiff that "not everyone feels the way he does.  We like having you here.  I don't have a problem with you or your color."

5

30. On April 21, 2021, Ross Lloyd, an engineer, told the plaintiff, "Congratulations, I hear you are being hired on." The plaintiff thanked him. He asked how the plaintiff was doing. She said that she was doing okay. He asked, "Are you sure you are okay?" He continued, "I am aware of the comments that Conner made and I in no way, shape or form believe in discrimination. I understand how you might feel. I used to work for MSA Safety. I designed some of their computer software. I had worked for them a long time and got a good review and received a nice raise. Three weeks later, I was laid off due to my age." The plaintiff responded, "Oh, my, they can't do that!" He said, "Well, they did. I don't think what Conner did was right and I apologize on behalf of his ignorance. Discrimination has no place in the workplace or any other place. My situation was different, but discrimination is discrimination."

31. French saw that the plaintiff was talking to Lloyd and, after he left, she asked the plaintiff if she was okay. The plaintiff responded, "I'm good. I just can't believe that my color was brought up in a meeting. I can't believe that he [Norwicki] didn't want to hire me because I'm black. It makes me angry that my color is what I'm being judged on and not my work ethic." French said that she understood. The plaintiff said, "No, you don't. Your color is not in question. Your color will never be in question." French did not take offense; instead, she said, "As your friend, I am here for you no matter what. It's not right but you are not the first. Look around; what do you see?" She was referring to the fact that the workers were all white.

32. Shortly afterwards, at around 11:00 a.m., Steven Shedlock, the union president, talked to the plaintiff and confirmed that her start date was April 26. He explained some of the processes regarding the union and explained how to bid on jobs. He told her that there were two positions open for bidding and that she could sign for one or both of the positions. He told her

that the decision on who gets what job would be based on seniority.  At approximately 1:30 p.m., the plaintiff went to HR and signed both bids.

33. On Friday, April 23, 2021, the plaintiff received a call from Jessica Bender-Gerard, a representative from PeopleShare.  She told the plaintiff that HR just called her and said that the company was terminating the plaintiff's contract and that she should not come to work on Monday, April 26.  The plaintiff was shocked by this news.  She said, "Why?  I'm not understanding.  I was supposed to be hired by the company on Monday!"  Bender-Gerard asked, "Did anything happen today?"  The plaintiff responded, "No, today was like any other day."  She then told Bender-Gerard what she had found out about Norwicki not wanting to hire her because of her race.  Bender-Gerard promised to get a hold of the folks from HR to find out what happened, but Bender-Gerard never reported back regarding the issue.

34. Bacharach refused to hire the plaintiff as a full-time employee and terminated her employment because of her race.  Any other reasons offered by Bacharach are nothing more than a pretext.

## FIRST CAUSE OF ACTION

35. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

36. The plaintiff is African American and thus is protected against discrimination on the basis of her race pursuant to Title VII.

37. The plaintiff was qualified for her position.

38. Despite her qualifications, the plaintiff was terminated.  The reasons given for her discharge were a pretext.

39. The defendant's discharge of the plaintiff was because of her race in violation of Title VII.

40. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of race discrimination.

## SECOND CAUSE OF ACTION

41. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

42. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq*.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

    Respectfully submitted,

    */s/ Michael J. Bruzzese*
    Michael J. Bruzzese
    Pa. I.D. No. 63306
    220 Koppers Building
    436 Seventh Avenue
    Pittsburgh, PA 15219
    (412) 281-8676
    Counsel for the plaintiff

Dated: September 14, 2021